Good morning and may it please the court and counsel. My name is Mike Mauer. I'm here appearing on behalf of the appellant in this matter, Mr. Fleetwood and Mr. Rosmus and their respective spouses. I would like to begin by talking about what I think is the most critical, most seminal issue arising on this appeal and that is did the district court err in concluding that there was not at least issues of material fact related to the cause of action from the implied covenant of good faith and fair dealing, which is embodied in every contract in the state of Washington. The franchise agreement between Stanley Steamer and Mr. Fleetwood and Mr. Rosmus contains some very specific and some very clear delineated duties for both parties, both the franchisee as well as the franchisor. As the court may be aware from reviewing the franchise agreement, the duties of the franchisee are numerous and listed throughout the franchise agreement. The delineated duties of the franchisor are more narrow and are not certainly not as numerous, but there are some very specific duties that Stanley Steamer agreed to undertake. First and foremost is they undertook a duty at article 8 section M to provide such additional advice, counseling, management assistance as the owner shall reasonably request. And of course as the record reveals in that case, Stanley Steamer took a very active role in undertaking that duty. Stanley Steamer is much different than many other franchise relationships, in fact much different than almost any other contract relationship you may see, was very involved in the financial preparation and the financial guidance and counseling of these franchises. They prepared the yearly budgets. They prepared cash flow analysis. They, within the yearly budgets, set forth the recommended expenditures for such things as advertising, marketing, equipment purchase, leasing obligations. And not only were they involved in rendering that advice per their specific duty under the contract, they were also the only lender to the franchises. Well, doesn't sound like there's a breach of that provision then. They provided advice, so what's the complaint? Well, they provided the advice, but the question is whether that advice was facts in the record, at a minimum create a genuine issue of fact as to whether that advice and counseling was appropriate. You want them not to give the advice? No, certainly the advice was welcome, but it needed to be appropriate. And we know... So what was inappropriate? The fact that they encourage these franchises to spend money at an exorbitant rate and amount on things as marketing, advertising, equipment purchase, all with the exhortations, for Stanley Steemer, grow these franchises as quickly as you can. Grow, grow, grow. And we know that advice was inappropriate, not only because the business model itself was destined to fail, but we know that because Mr. Wesley Bates, the chief executive officer of Stanley Steemer, testified in this case when questioned about such growth, such exponential growth. His comment was, that is growth that is out of control. That is growth that is destined to cause problems. What's the conflict? I mean, most businesses want to grow, but they have to understand that if they can't keep up with the demands of the growth, then they get themselves into trouble. I don't know that that's particularly sophisticated wisdom. How is it that that represents a breach of this covenant? Because certainly Stanley Steemer knew by giving this advice, they knew from their wealth of experience in overseeing and managing and counseling franchises, that growth of this nature was, as the CEO... Growth of this nature. They gave advice about growing. Do you have any particulars you can point to, or any authority, any expert, anything that suggests the specific advice given by Stanley is a breach because it's unwise, it's misguided, they know better. I mean, telling me that uncontrolled growth is a problem and Stanley urges growth doesn't tell me there's a breach. Well, in fact, we did have an expert who opined that such growth was unreasonable, could not be sustained. It was a business model which only allowed for rapid expansion of the Stanley Steemer goodwill, allowed for rapid retention of customers. Well, on its face, that seems... I've got a couple different questions there. One, such advice... I've got to get specific here. I've gone through the record. I don't recall seeing something that I thought I was looking for, but I might have missed it. But it doesn't help Stanley to have franchisees fail. They're not developing goodwill if their franchisees go belly up. I can't imagine that franchise is going to be worth all that much, and I have difficulty with the argument that suggests Stanley gets his valuable franchise from a guy that just went bust. So, again, on the surface of it, I'm not sure that I follow the thrust of your theory. Your Honor, I respectfully submit that they do. Stanley Steemer does gain value by that, because they have a franchisee who not only is paying a royalty based upon volume of business on gross sales, but also they... if the franchisee is unable to make their sales with my clients, Stanley Steemer can do exactly what they did. Either step in and sell the market at... sell that particular market at fair market value rate, which is certainly higher than the obligations owed to Stanley Steemer, or assume the market for themselves and take it over and operate it as a company... With a business model you've described as guaranteed failure. To suggest that the growth that was achieved could in fact be profitable begins to turn focus back on your client as perhaps not knowing how to operate the business because somebody else can come in and make it a success. But that is the point. It is not profitable at the start. When you are spending so much money growing your market on advertising, marketing, in essence creating the goodwill in the market, that's not a profitable business scenario for that franchisee. But somebody who then steps in at a later date after the market is changed in the market can operate it profitably. Is there any proof in the record that Stanley Steemer treated your franchisees any different than it advised or treated its other franchisees throughout the country? There is no evidence in the record of that. What the record does show is the advice was given and that Stanley Steemer knew, at least as it related to these two franchises, was unsound. He knew that that was growth that was out of control. Is that exactly what the statement of Bates is? Out of control? Absolutely. That is a verbatim statement. His deposition testimony is part of this record. When questioned about this exponential growth, his statement was that is growth that is quote out of control close quote and going to have problems. It seems to me that if you know if Stanley Steemer's advice to all its franchisees was just like to your people and it was truly an unsustainable model, the whole Stanley Steemer operation would collapse. And that isn't obviously what's happened. Well it's not obviously what happened, but certainly there are other franchises that have failed. Now that is not part of the record in this case, but again that's what we need to address obviously the very specific record in this case. But your clients turned out not to be novices, right? I mean they were had been in the Stanley, they were employees of Stanley Steemer before they took their, they weren't just babes out of the woods who were dunking donuts to Stanley Steemer. They were, your honor is correct, they were employees of Stanley Steemer, but they were not sophisticated business people. And more so as the record reflects, they were personal friends with the CEO of the company. They had personal relationships with the senior executives and took their advice more so than just an arm's-length scenario, took it as advice not only as the CEO of the company, but as a personal friend. Well, let's go back. It's my understanding that the agreements your client entered into suggested that this was a risky business, that success depended on your client, and depended on what he would be doing in the particular situation. That was in the agreement that he signed. He signed this agreement suggesting even further that he was absolutely on his own here. Wasn't like they were coming in. He's an independent contractor, not an agent. No fiduciary relationship exists. He conducted an independent investigation of the business, and success would be greatly dependent on his ability. All of that, again, leads me back to the same idea. I guess I'm trying to figure out, in this particular situation, what evidence I have that just because somebody gave him advice as to how to do things, that that was very specific advice. It was cash flow analysis, it was budgets, it was recommendations to acquire... He couldn't have said no? Certainly he could have said no. I'm not going to suggest he could not have said no, but that's not what the... I mean, what I'm trying to do is read this contract, because an implied covenant of good faith and fair dealing doesn't add agreements to the contract. It arises from the contract itself. I agree. Cannot override the terms of the agreement. Yes. Doesn't inject new terms in it. Now, I've suggested here, he said I'm an independent contractor. He says no fiduciary relationship exists. He says I've conducted my own independent investigation, and the success is I'm an independent business person, and then it says they will come and consult, and in fact it says that he can go out and consult on others concerning potential benefits and risks that can be involved. And now I, from that contract, am supposed to suggest that because advice was given, the breach of the covenant of good faith and fair dealing was breached? If the advice is provided in violation of the covenant, if the advice is inappropriate, and I would refer to this court's decision in Scribner v. WorldCom, it's not a showing... We do not need to show affirmative malice. We do not need to show dishonesty, in fact. Rather, as the decision in Scribner guides us, the duty may be breached by simply disregarding the plaintiff's justified expectations. And if your client says that SSI makes no warranties, no guarantees expressed or implied, as to potential income, profit, or success of the business contemplated by the agreement, again I'm trying to figure out how in the devil do I make an implied covenant of good faith and fair dealing simply because they give him some advice. They have to give the advice that is appropriate. And when the chief executive officer of the company knows that that advice is going to lead to a situation where this business is out of control and going to have problems, certainly I would suggest that there is, at a minimum, a question of fact for the jury to decide. Did they exercise that specific duty that Stanley Steemer had obligated itself to, to render that advice? And as the Scribner court, this court in Scribner noted, that the duty may be breached by simply regarding the plaintiff's justified expectations. Certainly he had, both Mr. Fleawood and Mr. Rosmus, had a justified expectation that the advice and counseling provided by the franchisor... Why would they have a justified expectation, given all that I've read to you, that this was anything other than theirs to run, to deal with as they wanted, that these people would give them advice that they would give, but that they were in fact in charge. That they're in fact in charge of what they do, when they do it, what they do. I mean, I'm reading the contract. I'm trying to figure out why it is your client should say, oh, even though I'm my own boss, even though I could go out and get somebody else to tell me what to do, even though they don't even have a fiduciary relationship to me, nonetheless, anything they say, I got to do. It's not that they have to do it. Certainly I concede that they were free not to follow the advice, but the advice was a specific duty that the franchisor undertook. And in undertaking that and providing it, they have an obligation to do it in good faith. And if they know, if they know that advice is such that would lead a business to be out of control or going to have problems, I suggest there's a question of fact as to whether that advice was given in good faith. I am also a little bit concerned that your improper motive that you suggest that they might have had, that the market was saturated, then SSI could come in and sell the franchise easier and operate it themselves, doesn't seem to be argued to the district court any place. Your Honor, I notice that I have used all my allotted time and I hope to save some for rebuttals. Well, I'm certainly... That's fine. Go ahead and answer the question and we'll give you a minute for rebuttal. Thank you. Your Honor, it was raised. Where? I would love to see it because I looked very carefully to try to find it. It was raised at the oral argument stage of summary judgment. Is that the... Okay, I'll look again at the oral argument, but I didn't find it. I will say, Your Honor, as the attorney who was making that argument, I know I made that argument. I reviewed it in the transcript preparing for this hearing today. I concede it was not raised in the briefing as it should have been, but it was raised at oral argument and as the cases we cite, the Bracara case and the Kornhusker case, show that issues raised at oral argument and considered by the court are not waived for purposes of appeal. Okay? Thank you, Your Honor. We'll hear from counsel for Stanley Steamer. Thank you, Your Honor. Mr. Miller. May it please the court, my name is Suzanne Richards and I'm here today on behalf of Stanley Steamer International. This case is about plaintiffs not paying Stanley Steamer for the use of Stanley Steamer's name, its marks, and its proprietary carpet cleaning system. It's about plaintiffs not paying seven cents of each dollar of sales that they made. And when plaintiffs refer to the debt from Stanley Steamer, a debt financing, what they are actually referring to are the royalties that they owed to Stanley Steamer but did not pay. And as a result of not paying, Stanley Steamer terminated these plaintiffs as the contract provided that they could do. Stanley Steamer did not take Mr. Fleetwood's business. He continued to operate a carpet cleaning business in the same area. It did not take his customer list. He continued to have that customer list. What Stanley Steamer did do was it stopped Mr. Fleetwood from using its name and its marks and its carpet cleaning system because he wasn't paying for them. Likewise, it did not take anything from Mr. Rasmus. Mr. Rasmus decided to sell his business or transfer his business to a new franchisee and he was compensated for that. Stanley Steamer forgave over $100,000 of royalty payments and payments for goods it had bought from it, from Mr. Rasmus, and in addition paid over $200,000 to his third-party creditors that he had not paid. Plaintiffs are basing their two primary claims, this contractual duty of good faith and then subsequently the area that Stanley Steamer told them to grow. Initially, as the court knows, they argued that by giving this advice, the supposed advice, and then terminating the plaintiffs that Stanley Steamer breached the termination provision, the duty of good faith under the termination provision. At the oral argument for the first time, they raised the issue of no, it's the advice provision that has been terminated. And I think that regardless of whether you're looking at the termination provision or the advice provision, there is no claim for a contractual duty of, a breach of the duty of good faith. As the court recognizes, such a duty does not expand or change expressed terms of the contract. It typically applies when one party has some kind of discretion and it's to preclude that party. Let's assume a state of facts existed, which I don't say exists here, but let's say a state of facts existed where this correspondence within the company's files were found going back and forth saying, we're telling franchise to do X with a very detailed plan. X is a prescription for failure. We're going to get that franchise back and make a real killing when we sell it to the next guy. Would you agree with me that that would suggest a problem in trying to enforce the contract and the terms that the contract in print says? But probably some court would raise its eyebrows and say, not so fast. I would certainly concede with Your Honor that those would be a very bad set of facts. I also would suggest, though, that when you have a contract in which the expressed terms set forth certain things, that the duty still can't vary those expressed terms. You might have a cause of action for something else, but I'm not sure that even that would give you the duty of good faith. If you look at this case, for example, the advice provision, which is really the focus of the appeal, and you look at what it says, that Stanley Steemer will furnish such additional advice or counseling or management assistance as a franchise owner reasonably requests. First, that doesn't change the fact that the termination here, which is what they're complaining about, was according to the expressed terms of the contract. They didn't pay. We eventually terminated. But I think it's also fair to say that the growth concept is an expressed term of the contract also. If you look at Article 2, it says a franchise owner is required to utilize best efforts to promote, maintain, and increase sales. And that advice to grow is really no different than utilize your best efforts. More importantly, this provision expressly sets forth what is the minimum best effort that would be required of a franchise owner. And as long as those minimums are met, which are not really at issue in this case, there is no ability to terminate the contract. So there's no discretion vested in Stanley Steemer with regard even to the grow idea. It's a term of the contract. Well, there's nothing that precludes Stanley from encouraging growth more rapid than would be suggested by the increase in the minimum monthly royalty payment. And in fact, the allegation here is exactly that, that the minimum monthly royalty payment increase is relatively modest, that Stanley gave advice and guidance that called for much more rapid growth of a kind which plaintiffs argue was the out-of-control prescription for failure advice. Now, I'm not saying they have what I described as the smoking guns from the company's files and put together the factual scenario on the two sides. But I still, I guess I pause and say if they can put together that factual scenario, or for summary judgment purposes, put together a prima facie case of that scenario, why wouldn't they be entitled to proceed with that both as an affirmative defense to your client's action and as an affirmative action on their part for breach of something? Well, first, Your Honor, assuming I understand the question, they didn't show that. In fact, there's nothing other than the statement where they say they were told to grow by X percent. Nothing in the record on that. What they have, as I think the district court properly found, was this vague statement of, we were told to grow. And again, as... But you admit they were told to grow, but you're saying was not at the level that that would be deemed out of control. Certainly for purposes of summary judgment, yes, we did not dispute that fact for purposes of summary judgment. If you assume they were told to grow, what the evidence they presented at best is they were told to grow. Nothing more than that. No percentage rate, no, you know, grow by X. And you have an express term of the contract that tells you what you have to do in the growth area. The best What's your response to counsel's comment that Mr. Bates saying that agreeing that it was out of control, or that this model would cause them to be out of control? Well, I'd say two things to that, Your Honor. First of all, in my review of the record, I do not believe that that statement is in the record. Secondly, and I looked, everybody's fallible, and so I want to be careful here, but I don't think that actually was in the record. Secondly, I'm not sure that the testimony that I think they purported to refer to exactly says, you know, he told them to grow and this growth rate is out of control. That is not what is being said. I think let's assume for a moment that it got into the record, if I may, for purposes of pursuant to their, to what, for example, Mr. Fleetwood, not Mr. Rosmus, but what Mr. Fleetwood reported, his growth is X percent. And would you consider that? What would you say about that? I'm not, I don't want to be saying that's verbatim. And I believe Mr. Bates said, I would think that might be out of control. Not saying it can't be done, but what you have, and he then went on and you know, because what the big thing here, of course, is customer satisfaction. Are you doing the jobs properly? Are you otherwise running your business properly? And I, again, I don't believe that that got into the record, but for purposes of the argument, I'll say, I'll agree with Mr. Maurer that maybe it did. And I'm saying, I'm not sure that I would characterize it exactly as he has. I'll go ahead and alert Mr. Maurer. I didn't find quite the same statement either, but I miss things in reading. And I've had CEO clients who say stupid things like that during a deposition, so I wasn't surprised. But I'll give him a chance so he can find it and he can point us directly to it when he comes back up. I think as the agreement recognizes, these plaintiffs were independent businessmen. They were running and controlling their own businesses. And as the courts in Goodyear and in Evergreen observed in a very similar context, these are experienced plaintiffs, not just in business, but with regard to Stanley Steemer. When you conjoin that with the fact that you have expressed terms here pursuant to which Stanley Steemer acted, I think what you have is a situation where, as a matter of law, there can't be a breach of the duty of good faith and fair dealing. I think, finally, to say that the advice is inappropriate is simply not enough. And there's absolutely no evidence in this record of bad faith by Stanley Steemer. For the first time, I believe it's the first time in the briefs, I understand there are some conjectures about why Stanley Steemer would do this. But there's no evidence about that, number one. And number two, again, they didn't take the area from Mr. Fleetwood. He continued to operate a business. All they did was stop him from using their name to run that business in that area with his same customer list. Did they subsequently open or sell a franchise to somebody else in the same geographic area? Correct. Yes, they did, Your Honor. Because the argument would be the Stanley Steemer name had been promoted. And so what they had to offer to the new franchisee was something of more value than what they had previously because the name was out there. Well, I think two things, Your Honor. First of all, the contract provides that the goodwill belongs to Stanley Steemer, and it does from the beginning of time. Number two, I don't know that I would say this is a part of the record, but as an argument, I don't, I would pick up what the court said. Stanley Steemer gives these agreements, they're 20-year agreements, 20 years. They clearly are a commitment for these people to succeed. And when they don't succeed, it doesn't help their name. Mr. Fleetwood, I think it's part of the record, left lots of debts in this area that had to all be, you know, overcome by the new franchise owner, if you will. It doesn't help. And there's no evidence in the record that somehow having someone fail as a franchise owner helps Stanley Steemer's goodwill in any area, and certainly it's not in the record in this area. I know time is limited, but let me just address briefly the fiduciary claim. I think both by virtue of the contract and by virtue of the course of dealings of these parties, there was no fiduciary relationship that existed or was created here. Certainly, as the court recognizes, there was an express term that told these individuals, there's no fiduciary relationship. Clearly, you have individuals who were familiar with the system. Mr. Fleetwood worked for Stanley Steemer for 12 years. I think the thought is that, well, Mr. Fleetwood in particular, though, was a hunting buddy of Mr. Bates, right? Well, I think what the record shows, Your Honor, is Mr. Fleetwood, along with other franchise owners, would go on hunting trips with Mr. Bates, yes. But I don't think that he's any different than other... I mean, what the record shows is he was not the only franchise owner on those trips. There were multiple franchise owners on those trips. I also don't believe, frankly, that under the law that friendship alone, even if you assume that to be true, and again, for purposes of summary judgment, we're not really disputing how Mr. Fleetwood characterized that relationship. I don't think that can vary the express terms here or the course of dealings. I mean, after all, when these people got into default, Stanley Steemer enforced its rights. It sent them letters. In fact, it sent them termination notices. It negotiated with them. It had them sign promissory notes. It clearly protected, as the Carter equipment case, which plaintiffs rely on a great deal, it protected its individualized interest. And when you have these facts that are undisputed as to the course of dealings, as well as the express term of the contract, I think as a matter of law, you cannot find that a fiduciary relationship exists here. The other two claims that plaintiffs appeal are derivative, the statutory good faith claim and the CPA claim, both derivative of these two primary claims that we believe fail. In addition, the statutory good faith claim under FFIPA, under subsection one, I think no Washington court has found that there is a separate cause of action for that. The CPA claim relies on having an unfair deceptive act, and the FFIPA good faith is not an enumerated unfair deceptive act under 19.100.180, subsection two. So for those reasons, we'd say those derivative claims must fail also. In short, the district court properly granted summary judgment, and we ask that it be upheld here. Thank you very much. Thank you. We'll have rebuttal. Thank you. What I would like to do is address the specific issues, again, and focus has been on the implied covenant of good faith and fair dealing, and would suggest to the court that the decision in Scribner is what provides the appropriate guidance. And that is, it is not a determination as to whether Stanley Steemer acted with actual malice or with a dishonest... Did you find your out of control quote? Your Honor, I'm sorry. I have not been able to locate. I was trying to find it and listen to counsel's argument at the same time. I know it is a direct quote from the deposition, and if the court may, I would certainly be glad to supplement a citation to that following the hearing. But be it as it may, it was obviously, I would suggest there is a question of material fact as to whether the advice given by Stanley Steemer was appropriate, whether it was within the justice... Your burden's heavier than that. There's nothing that contractually binds them to give quote appropriate advice. You're reaching out to a covenant of good faith and fair dealing. That means you need to demonstrate bad faith. Giving wrong advice doesn't tell us there's any bad faith here. So that doesn't make out a prima facie case. You need something that gets to bad faith. What gets to bad faith? It is when, as the Scribner Court, the Scribner decision guides us, it is not dishonesty. It is not malice. It is rather, did the... That doesn't tell me what bad faith is. What's bad faith? It's surely more than a breach of contract, and you're not alleging a breach of contract. So what is it? It is when the advice given does not meet the justifiable expectations of the franchisee in this case. That's exactly what the Scribner Court said. Well, it's got to be more than the advice was not sound. Absolutely. Stanley Steemer is not a guarantor of success. So it can't be that, gee, it didn't work out the way I hoped. What does it have to be? It has to be appropriate and has to meet the justifiable expectations of the parties at the time of entering into the contract. And an advice that which is destined to cause these businesses to fail, which cannot be sustained, is unsound, inappropriate advice that does not meet those expectations. But it's got to be more than not sound. Do you agree with that? I do. Okay. Well, thank you for the argument. Thank both counsels for providing us with their arguments. And that case is submitted.
judges: Gilman (6th Cir.), Clifton, Nr Smith, Cjj